# Case No. 18,275.

## CHARGE TO GRAND JURY—TREASON.

### [1 Story, 614.]

### Circuit Court, D. Rhode Island. June 15, 1842.

TREASON AGAINST THE UNITED STATES AND AGAINST A STATE—CONSTITUTIONAL DEFINITION OF TREASON — OPPOSING EXECUTION OF LAWS.

[1. To constitute treason against the United States by levying war, there must be a levying of war against the United States in their sovereign character, and not merely a levying of war exclusively against the sovereignty of a particular state.]

[2. To constitute a levying of war, within the meaning of the constitutional definition, it is not sufficient that there should be an assembly of persons merely to meditate and consult about the means of levying war at some future time, or upon some future contingency, without any present force. This would be a mere conspiracy to levy war. To actually levy war, there must be an assembly of persons, met for a treasonable purpose, and some overt act done, or some attempt made by them, with force, to execute, or towards executing, that purpose. The assembly must be in a condition to use force, and must intend to use it, if necessary, to further, aid, or accomplish the treasonable design.]

[3. If the assembly is arrayed in a military manner, if they are armed and marched in military form, for the express purpose of overawing and intimidating the public, and thus attempt to carry into effect the treasonable design, this will, of itself, amount to a levy of war, although no actual blow be struck or engagement take place.]

[4. It is not necessary to a treasonable design that there should be a direct and positive intention entirely to subvert or overthrow the government. It is sufficient if there is an intention by force to prevent the execution of any one or more of the general and public laws of the government, or to resist the exercise of any legitimate authority of the government in its sovereign capacity.]

[5. If there be an assembly of persons, with force, with an intent to prevent the collection of lawful taxes or duties levied by the government, or to destroy all customhouses, or to resist the administration of justice in the courts of the United States, and the assemblage proceed to execute this purpose by force, this is treason against the United States.]

[6. There may be treason against a state by levying war which is aimed altogether against the sovereignty of the state, as would be the case if the object of an assembly of persons, met with force, were to overturn the government or constitution of the state, or to prevent the due exercise of its sovereign powers, or to resist the execution of any one or more of its general laws, without any intention to intermeddle with the relations of the state with the national government, or to displace the national laws or sovereignty therein.]

[7. Treason begun against a state may be mixed up or merged in treason against the United States. If the treasonable purpose be to overthrow the government of the state, and forcibly to withdraw it from the Union, and thereby to prevent the exercise of the national sovereignty within the limits of the state, this would be treason against the United States.]

[8. If the troops of the United States should be called out by the president, upon the application of a state legislature or executive, to protect the state against domestic violence, and there should be an assembly of persons with force to resist and oppose the United States troops, this would be treason against the United States, although the primary intention of the insurgents may have been only to overthrow the state government or the state laws.]

STORY, Circuit Justice, after some preliminary observations upon the late alarming crisis of the public affairs in Rhode Island, and paying a just tribute to the excellent institutions and past history of the state, proceeded to say to the grand jury: This is the first occasion, for many years, in which it has become necessary for me, in addressing the grand jury, to state the doctrines of law applicable to the crime of treason. Happily, there is at the present moment a pause in the public mind, which I trust may be the harbinger of a speedy return to a permanent course of peace, prosperity, and general confidence among the

citizens of your state. It is impossible for me not to feel a deep sense of the dangers, through which you have so recently passed, and of the painful duties, which might have devolved upon this court in certain contingencies, which seemed at one moment about to be fearfully realized. It may not, therefore, be without some use, to call your attention to the law of treason, and to distinguish between the cases, where the crime is properly a crime against the United States, and the cases, where it, properly constitutes a crime exclusively against the state. Both may be, indeed (as will be presently shown), mixed up in the same transaction; or rather, the treason against the state may, under certain circumstances, be merged in the treason against the United States. Still, there is a broad and clear line of distinction between them in many cases, which I will endeavour briefly to explain and illustrate.

The constitution of the United States has declared that "treason against the United States shall consist only in levying war against them, or in adhering to their enemies, giving them aid and comfort." [Article 3, § 3.] There must, then, to constitute the crime, be a levying of war against the United States in their sovereign character, and not merely a levying of war exclusively against the sovereignty of a particular state. What, in the sense of the constitution, is to be deemed a levying of war? I take it to be clear, that it is not sufficient, that there should be an assembly of persons, who are met merely to meditate and consult about the means of levying war at some future time, or upon some future contingencies, without any present force. That would amount to a conspiracy to levy war. But a conspiracy to levy war, and an actual levy of war are distinct offences. To constitute an actual levy of war, there must be an assembly of persons, met for the treasonable purpose, and some overt act done, or some attempt made by them with force to execute, or towards executing, that purpose. There must be a present intention to proceed in the execution of the treasonable purpose by force. The assembly must now be in a condition to use force, and must intend to use it, if necessary, to further, or to aid, or to accomplish the treasonable design. If the assembly is arrayed in a military manner,—if they are armed and march in a military form, for the express purpose of overawing or intimidating the public,—and thus they attempt to carry into effect the treasonable design,—that will, of itself, amount to a levy of war, although no actual blow has been struck, or engagement has taken place. This is a clear case: but it is by no means the only case (for many others might be stated), in which there may be an actual overt act of levying war. I wish to state this only as one case, upon which no doubt whatsoever can be entertained. In respect to the treasonable design, it is not necessary, that it should be a direct and positive intention entirely to subvert or overthrow the government. It will be equally treason, if the intention is by force to prevent the execution of any one or more general and public laws of the government, or to resist the exercise of any legitimate authority of the government in its sovereign capacity. Thus, if there is an assembly of persons with force, with an intent to prevent the collection of the lawful taxes or duties, levied by the government,—or to destroy all customhouses,—or to resist the administration of justice in the courts of the United States, and they proceed to execute their purpose by force,—there can be no doubt, that it would be treason against the United States. But it is not every act of treason by levying war, that is treason against the United States. It may be, and often is, aimed altogether against the sovereignty of a particular state. Thus, for example, if the object of an assembly of persons, met with

force, is to overturn the government or constitution of a state,—or to prevent the due exercise of its sovereign powers, or to resist the execution of any one or more of its general laws, but without any intention whatsoever to intermeddle with the relations of that state with the national government, or to displace the national laws or sovereignty therein, every overt act done with force towards the execution of such a treasonable purpose is treason against the state, and against the state only. It is in no just sense a levying of war against the United States. But treason may be begun against a state, and may be mixed up or merged in treason against the United States. Thus, if the treasonable purpose be to overthrow the government of the state, and forcibly to withdraw it from the Union, and thereby to prevent the exercise of the national sovereignty within the limits of the state, that would be treason against the United States. So, if the troops of the United States should be called out by the president, in pursuance of the duty enjoined by the constitution, upon the application of the state legislature, or the state executive, when the legislature cannot be convened, to protect the state against domestic violence, and there should be an assembly of persons with force to resist and oppose the troops so called out by the president, that would be a levy of war against the United States, although the primary intention of the insurgents may have been only the overthrow of the state government or the state laws. These cases sufficiently point out the distinction, to which I have alluded, and it is not necessary, upon the present occasion, to go into more minute details.